IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

| | | |
|---|---|---|
| MARINOS N. GELARDOS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10CV259–HEH |
| | ) | |
| CONMED HEALTHCARE MNGT., INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**
(Dismissing Action Without Prejudice)

Marinos N. Gelardos, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. Dr. Hercules has moved to dismiss. Gelardos has responded. The matter is ripe for disposition. For the reasons set forth below, the Motion to Dismiss will be granted.

**I. Standard For A Motion To Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual

allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," rather than merely "conceivable." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate

2

failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Gelardos's Allegations

Despite the Court's repeated admonitions, Gelardos produces only the barest of factual allegations to support his claim against Dr. Hercules.[1] The sum of Gelardos's allegations in his Particularized Complaint are as follows:

> 1) I was an inmate in Chesapeake City Jail from 9-10-2009 to 5-7-2010, during my incarceration Dr. Hercules, an employee of Conmed Health Care, Inc. and under contract with the Chesapeake City Jail.
> 2) During my incarceration I experienced a great deal of pain in my lower back region, stemming from a lower lumbar surgery that I had in 1993. During my incarceration in Virginia Beach City Jail from 4-10-2009 to 9-10-2009 I had three "outside doctor visits" and the physician that I was sent to determined that I [had] degenerated disc/joint disease. I was sent to another "outside source" physician for a second opinion and the diagnosis was confirmed. The Dr. at Virginia Beach City Jail started me on a treatment plan along with medications.
> 3) That treatment plan that Virginia Beach put me on was not adhered to at the Chesapeake City Jail.
> 4) Dr. Hercules, the Dr. at Chesapeake City Jail [("C.C.J.")], did absolutely nothing for me during my incarceration at C.C.J., thus allowing my condition to progress to a much more worse problem. Dr. Hercules's professional judgment and total disregard to my "medical needs" and

---

[1] Specifically, by Memorandum Order entered on October 29, 2010, the Court informed Gelardos that his complaint must contain a short statement of the facts giving rise to each claim against each defendant. Thereafter, Gelardos submitted an amended complaint that did not meet the foregoing requirement. Accordingly, by Memorandum Order entered on January 7, 2011, the Court directed Gelardos that he must submit a particularized complaint that contained a short statement of the facts give rising to each claim against each defendant. On January 25, 2011, Gelardos submitted the present complaint ("Particularized Complaint"). The Particularized Complaint largely failed to comply with the Court's instructions. Accordingly, by Memorandum Opinion and Order entered on May 12, 2011, the Court dismissed all of Gelardos's claims except his claim against Dr. Hercules.

"wanton" infliction of pain on me possibly caused "irreparable harm" to me.

[5]) Dr. Hercules would not order any x-rays on me and refused to allow me to obtain a second mattress to ease my pain discomfort. I had to go through the grievance process in order to receive a second mattress.

[6]) The Chesapeake City Jail medical staff was in constant contact with the Virginia Dept. of Corrections so that they could get me transferred to the V.D.O.C. [Virginia Department of Corrections] quite simply to rid them of their problem of me.

[7]) The administering of medicines only by the Chesapeake City Jail medical staff only masked the initial problem at hand.

(Part. Compl. ¶¶ 1-7.)[2]

### III. Analysis

In order to state an Eighth Amendment[3] claim, the plaintiff must allege facts that show: "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). The first showing requires the Court to determine whether the deprivation of a basic human need was "*objectively* 'sufficiently serious,'" while the second requires it to determine whether the officials subjectively acted with a "'sufficiently culpable state of mind.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

"Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*,

---

[2] The Court has corrected the capitalization, punctuation, and spelling in the quotations to Gelardos's submissions. Additionally, the Court notes that the Particularized Complaint contains a number of statements, such as those in paragraph 4, which "are not entitled to the assumption of truth" "because they are no more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[3] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

4

330 F.3d 630, 634 (4th Cir. 2003) (citing *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). Therefore, the inmate must allege facts to suggest that the deprivation complained of was extreme and amounted to more than the "'routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society.'" *Strickler*, 989 F.2d at 1380 n. 3 (quoting *Hudson*, 503 U.S. at 9). Accordingly, under the objective prong, Gelardos must allege facts that suggest he sustained "'a serious or significant physical or emotional injury resulting from the challenged conditions.'" *De'Lonta*, 330 F.3d at 634 (quoting *Strickler*, 989 F.2d at 1381).

With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle*, 429 U.S. at 105–06). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Accordingly, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6

(3d Cir. 1970)). If an inmate's "disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *see United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011).

Gelardos alleges only limited facts in support of his claim against Dr. Hercules. From what can be gleaned from those facts, Gelardos had chronic back problems. Upon his incarceration in the Virginia Beach Jail, physicians provided Gelardos with medication and an undefined "treatment plan." (Part. Compl. ¶ 2.) Upon Gelardos's transfer to the Chesapeake Correctional Center, Dr. Hercules continued to provide Gelardos with medication for his back problems (*id.* at ¶ 6; Pl.'s Reply (Dk. No. 48) 2), but declined to follow the "treatment plan" the staff at the Virginia Beach Jail had pursued. (*Id.* at ¶ 3.)[4]

The limited facts alleged here fail to satisfy the subjective prong for an Eighth Amendment claim. Although Gelardos may have preferred surgery or some other method for treating his back problems, Dr. Hercules concluded that, during Gelardos's

---

[4] In his Reply, Gelardos alleges that the consulting physicians at the Virginia Beach Jail had suggested that Gelardos's "lower lumbar discs . . . are in need of operative repair along with his 15-year old post-operative hardware located in Mr. Gelardos's lower back." (Pl.'s Reply 2.) Gelardos, however, fails to allege facts suggesting that, as part of the "treatment plan," officials at the Virginia Beach Jail scheduled Gelardos for surgery. Nor has Gelardos alleged facts that suggest, in years following his release from the care of Dr. Hercules, Gelardos had such back surgery. Nor does Gelardos allege facts that indicate prompt surgery was the only appropriate course to treat his back problems. *See White*, 897 F.2d at 110 (concluding inmate did not state a claim where the inmate did not allege that a prior doctor ordered treatment with Epitol exclusively, or that the prior doctor indicated the inmate's treatment would fail if Epitol was withheld).

brief stay in the Chesapeake City Jail, medication sufficiently addressed Gelardos's back problems. Gelardos fails to allege exceptional circumstances that suggest his disagreement with Dr. Hercules regarding the proper course of treatment reflected deliberate indifference on the part of Dr. Hercules. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6); *see, e.g., Martinez v. Mancusi*, 443 F.2d 921, 924 (2d Cir. 1970). Such a conclusion is bolstered by the fact that Gelardos does not allege that after his incarceration some trauma occurred, resulting in an exacerbation of his back problems. *Cf. Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974) ("It may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . .") Gelardos's scant allegations do not "produce an inference of liability strong enough to nudge [his] claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 682). Accordingly, the Motion to Dismiss will be granted and the action will be dismissed without prejudice.

An appropriate order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: July 2, 2012
Richmond, Virginia